How does your shoulder feel? Well, after one surgery and another scheduled, Your Honor, I don't feel too good. But thank you for asking. Are you in pain? All the time. Can you argue all right? I can argue. I'll try not to gesticulate. Are you more comfortable sitting down while you argue? This is all right. I'll try not to gesticulate too wildly. Good luck to you. Thank you very much. Will you be able to pitch again after this shoulder? I shouldn't have tried out for the Olympics. That's what did it. I am content to submit on the issues for the issue of credibility of my client. The one issue that I would like to address the court on is ineffective assistance of counsel. Before I begin my substantive presentation, I'm sure the court has already read the record, and the issue with regard to ineffective assistance, which is basically in the administrative transcript on pages 96 to 98, I believe, reflects probably a new attorney who had never before argued in front of an immigration judge. This comes across in the colloquy with regard to her argument on ineffective assistance, pardon me, argument on preparing a client or non-preparation of a client for a voluntary departure. What comes across to me is a nervous attorney who had never before argued in front of an immigration court. If we substitute the word Ninth Circuit for immigration court, this is how I feel today, rather nervous, and I request the court's understanding of my unfamiliarity with court procedure. The issue of ineffective assistance was not raised to the Board of Immigration Appeals because the trial attorney was the attorney on appeal to the BIA. I, therefore, would argue that administrative remedies were foreclosed because the 90-day period in which a motion to reopen must be submitted to the Supreme Court, pardon me, to the BIA, had passed before I even saw the administrative record. I'm, therefore, requesting ---- The portion of the clients get stuck with their mistakes of their lawyers all the time, and failing to raise them to the BIA is jurisdictional. I understand that, Your Honor. Therefore, I'm requesting the court ---- Get involved in the case. Just file ---- Tell me in terms of dates. I meant in terms of the stage of the process. The client came to me just a few days before the 30 days were up to file a petition for review with the Ninth Circuit. I did not have the record to review. The first time I saw the record was when I received the administrative record some several months later. So it ---- Where was that in relationship to the 90-day ---- Oh, well past the 90 days, Your Honor. After the 90 days. Well past. Not even close. Well, you still have a remedy. It's not much of a remedy, but you still have a remedy in the form of a motion to reopen for extraordinary reasons. I understand that, Your Honor. And I ---- Your use of the phrase extraordinary reasons, it occurred to me. I was content to request this Court to make a decision based on equity as a matter of fairness to the client. Voluntary departure is one of the distinct advantages in a removal proceeding. In the instant case or in any case for removal where an asylum application is the ---- reopening, at least that would have given the agency a chance to consider the claim. Mm-hmm. Which, you know, probably wouldn't have done me any good, but at least you could stand here and say we at least asked the agency to. We did give the agency a chance to have a look. That's true, Your Honor. I'm aware of the normal procedures of doing a lasada motion, filing a complaint against the attorney in front of the State Bar, but I felt the time had long passed for that, and my basic recourse was with the Ninth Circuit. If you view the transcript, you'll see a client who did not really understand what his attorney was talking about. One of the basic functions in immigration practice when you're at the level in front of the immigration judge is how to prepare your client for voluntary departure. It is a distinct advantage. It makes a world of difference, particularly since after 1997, many respondents will be hit with a 10-year bar for overstaying the initial terms of their visa entry. This was probably a case of that nature. I'm arguing that the attorney should have prepared her client what was voluntary departure. He was clearly afraid, as comes across in the colloquy, by basically saying, I'm a poor cook. I don't have a job now. I don't really have any money now. I think he thought by accepting voluntary departure, he was relinquishing his claim for asylum. A well-prepared attorney would have prepared his or her client by explaining to him that voluntary departure is an alternative to removal or to denial of an asylum application. It does not prevent you from filing an appeal with the Board of Immigration Appeals. It's clear that this was not done in the instant case, and the client was caught between two things, his misunderstanding of the situation and the fact that he might have to put up $500, not being aware that he could borrow it from friends, even if he was not currently employed. So what this attorney should have done was, I feel, take time out before to prepare her, prepare the client. She was preparing him on the fly, so to speak. She admitted to the immigration judge that she had never done preparation for voluntary departure before and indeed requested the assistance of the judge. The judge perhaps tried to help but really could not take over the role of trial counsel herself. So this is the situation that Mr. Kahn finds himself in. I'm — Counsel, even if we agreed that we could override the exhaustion, where would we get power to grant your client voluntary departure in light of Section 1229? Well, I'm requesting that you remand it back to the judge to consider the issue of voluntary departure. If we remand it back to the judge, the judge is going to say that they can't accept it because the time is run. Well, at least she would have had the opportunity to have heard a well-prepared presentation of voluntary departure. She could have made that decision, but at least Mr. Kahn would have a more realistic second chance at this distinct advantage. So what I'm suggesting is wouldn't the immigration judge not hear the issue because it's too late to renew it, to take another look at it? Well, if it could be remanded to the BIA with instructions to remand it back to the immigration judge. How would we have power to do that when we're told by the statute to keep our hands out of the bill? Well, this is why I'm requesting a decision in equity, Your Honor. I'm not terribly familiar with that, but that's my only request from Mr. Kahn, I believe. What case do you rely on that our court has power to remand a case to the BIA with directions to remand it to the I.J. to consider voluntary departure? I'm not aware of any specific case, Your Honor. I am aware of a recent case, a case with regard to the issue of voluntary departure, Al-Himri, which was decided by this Court. It is on that basis, the equitable power of this Court, that I'm requesting this remedy. There's an equitable power for us to instruct the BIA on voluntary departure? That doesn't – that is not exactly on target, Your Honor, but in a general sense. I won't go any further because I'm not familiar with specific cases. Okay. Thank you. Good morning. May it please the Court, my name is Keith Bernstein, and I represent the Respondent Attorney General, John Ashcroft. With respect, Your Honor, to the ineffective assistance of counsel claim, as Judge Wallace  of 240BF, 8 U.S.C. 1229CF, and also 242A2BI and 8 U.S.C. 1252A2BI, prevent this Court from hearing Petitioner's claim. Because Mr. Kahn did not raise his ineffective assistance of counsel claim before the Board, he has failed to exhaust his administrative remedies, and therefore the Court left jurisdiction. You'd have to agree that really to file a motion to reopen at this point would probably be futile, right? That's true, Your Honor, because the time has run. But nevertheless, Mr. Kahn in not meet – or not even attempting to meet the Luzzatto requirements has not even shown that any prejudice occurred as a result of his alleged ineffective assistance by prior counsel. There's no indication from the record, and I don't believe that Mr. Kahn is meaning to contend, that he was in fact lying when he admitted to the immigration judge that he did not have the money to obtain a plane ticket. If you look at the record, the immigration judge noted that, at page 46, that Mr. Kahn did not have a valid travel document. He stated unequivocally before the immigration judge that he did not have the money to pay for departure. And then she also found that he therefore didn't – also didn't deserve discretionary grant because he failed to credibly testify. So for all those reasons, the immigration judge made a finding on voluntary departure and denied Mr. Kahn that relief for those reasons. There's no reason that the government can see, Your Honor, to remand, and there's no authority for this Court to remand to the board to make a decision on voluntary departure. El-Hemry, despite Petitioner and his counsel's claim, does not stand for the proposition that there's an equitable power for the Court to return the case to the BIA to make a decision on voluntary departure. Notwithstanding those arguments, the appropriate inquiry in this case is whether or not the immigration judge provided specific and cogent reasons for her decision to deny Mr. Kahn's asylum claim or his application for asylum based on her adverse credibility finding. And that finding, being reviewed under the highly deferential substantial evidence standard, cannot be reversed by this Court unless Mr. Kahn has presented evidence that is so compelling that no reasonable fact finder could fail to find him credible. In this case, the immigration judge did cite specific. Your adversary submitted that on the brief. Do you want to add to your brief on the issue? I just want to add specifically, Your Honor, that although the brief doesn't necessarily cite specific instances or it doesn't necessarily cite a wealth of specific instances in the record, there are, in fact, there are, in fact, instances of inconsistent testimony, discrepancies between the application and the testimony, the IJ's finding on demeanor, and also the lack of corroborating evidence. Those things collectively support the IJ's adverse credibility finding. Although Petitioner's Counsel did not address the issue of the question of whether or not the Court should review the Board's decision to streamline this case, presumably the Court received the 28-J letter submitted by the government. If not, the clerk has extra copies. But as the Court is probably well aware, this Court's decision in Falcone-Creesh would preclude. No, we're quite aware of Falcone-Creesh. Okay. Yes. Other than that, Your Honor, if the Court has no other questions. Sure. Thank you. Thank you very much. I believe we are out of time. The case is decided. You can submit it. We'll next hear argument in Chen v. Ashcroft. The litigious Mr. Ashcroft shows up in our dock at all times.  May it please the Court. Thank you, Your Honor.
judges: Wallace, Kozinski, Thomas